UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | | |
|---|---|---|---|
| ENVIROPAK CORPORATION, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No. | 4:14CV00754 ERW |
| | ) | | |
| ZENFINITY CAPITAL, LLC, | ) | | |
| | ) | | |
| Defendant. | ) | | |

**MEMORANDUM AND ORDER**

This matter comes before the court on "Plaintiff's Motion To Quash Subpoenas, Or, In The Alternative, For Protective Order" [ECF No. 18].

**I.    BACKGROUND**

This lawsuit arises out of negotiations between Defendant Zenfinity Capital, LLC, and Plaintiff EnviroPAK Corporation, a manufacturer of protective molded pulp packaging. Plaintiff alleges it was contacted by Defendant, in May 2013, regarding a proposal to purchase Plaintiff. Plaintiff contends, to aid in the negotiation process, the parties entered into a "Mutual Confidentiality Agreement," which prohibited Defendant's disclosure and use of "Confidential Information," including customer information and proprietary information. The Mutual Confidentiality Agreement dictated neither party would interfere with the employment relationships of the other party's employees. Plaintiff states it rejected Defendant's ensuing purchase offer in July 2013.

In April 2014, Plaintiff initiated this lawsuit by filing its "Complaint" [ECF No. 1]. The Complaint asserts two breach of contract claims (Counts I and II), a claim for tortious interference with a business relationship (Count III), and a violation of the Missouri Uniform

Trade Secrets Act for misappropriation of trade secrets (Count IV). Specifically, Plaintiff alleges Defendant violated the Mutual Confidentiality Agreement by hiring Plaintiff's then-Vice President of Manufacturing, Rodney Heenan, who was previously bound by a "Confidentiality, Non-Disclosure, and Non-Compete Agreement" with Plaintiff. Plaintiff also alleges Heenan has disclosed, and continues to disclose, confidential information to Defendant, including trade secrets and customer information.

On May 22, 2014, Defendant submitted to Plaintiff its First set of Interrogatories and First Requests for Production of Documents [*See* ECF No. 19 at 4]. On July 10, 2014, Defendant served two subpoenas for the production of documents: one to Plaintiff's bank, Bremen Bank, and another to Plaintiff's customer, Stephen Gould Corporation [ECF No. 19-1 and 19-2]. The parties agree the subpoena served upon Stephen Gould Corporation is now moot, because Defendant has agreed to withdraw it without prejudice. The subpoena served upon Bremen Bank, however, remains at issue, and is the subject of this Motion. Exhibit A to this subpoena makes the following demand:

> Produce any and all documents, records, and things regarding EnviroPAK Corporation . . . since January 1, 2011, including, but not limited to, the following:
> 1. . . . Among other things, the term "document" refers to and includes the final form and all drafts and revisions of any type of written or graphic matter, original or reproduced, and all copies thereof which are different in any way from the original, regardless of whether designated "confidential," "privileged," or otherwise restricted. Without limiting the generality of the foregoing, the term "document" includes books, papers, letters, telegrams, memoranda, communications, minutes, notes, E-mail, electronic mail, voice mail, electronic bulletin board postings, schedules, tabulations, vouchers, accounts, statements, affidavits, reports, abstracts, agreements, contracts, diaries, calendars, plans, specifications, drawings, sketches, photostats, photographs, charts, graphs and other similar objects, and any kind of transcript, transcription or recording of any conversation, discussion or oral presentation of any kind, and any information stored on, and reproducible in documentary form from a computer or other electronic, magnetic, optical or laser based information storage device, including but not limited to floppy

> disks, hard disks, tapes, DVD/CD, UBS drives, hand-held computer devices, or blackberry devices and any backups thereof.
> 2. Any and all account applications;
> 3. Any and all credit applications;
> 4. Any and all loan applications;
> 5. Any other document in your possession regarding or relating to EnviroPAK Corporation, including, but not limited to, any and all electronic or other communications sent to or received from EnviroPAK Corporation;
> 6. Any and all financial statements provided by EnviroPAK Corporation to secure financing or credit;
> 7. Any and all financial projections;
> 8. Any and all cash flow projections;
> 9. Any and all business proposals;
> 10. Any and all documents regarding Zenfinity Capital's potential acquisition of EnviroPAK corporation.
> 11. Any and all documents regarding any potential acquisition of EnviroPAK.
> 12. Any and all documents regarding any alleged claims by EnviroPAK against Zenfinity Capital.
> 13. Any and all documents used by EnviroPAK Corporation to secure financing or credit; and
> 14. Any and all documentation in your possession which relate in any way to EnviroPAK Corporation's product(s), including, but not limited to: patents, case studies, design process, prototype process, production tooling process, and SolidWorks 3D software and CNC technology.

[ECF No. 19-1 at 4-5].

Plaintiff states it communicated its concerns regarding the subpoena to Defendant, but failed to resolve the resulting dispute over the propriety of said subpoena [ECF No. 19 at 8-9]. Plaintiff filed this pending Motion on July 21, 2014, asking the Court to quash the Bremen Bank subpoena, or in the alternative, issue a protective order requiring Defendant to direct its requests to Plaintiff.

On September 18, 2014, the Court conducted a hearing on Plaintiff's Motion to Quash [ECF No. 30]. During the proceedings, Plaintiff addressed the standing issue, arguing the financial nature of the information requested by Defendant bestowed upon Plaintiff a "personal right" in the documents. Additionally, Plaintiff discussed its request for the Court to order Defendant to seek the relevant information from Plaintiff first. In doing so, Plaintiff emphasized

the procedural difficulties of the Bremen subpoena, contending the only way Plaintiff could object to such third-party requests was through this Motion to Quash. Finally, Plaintiff maintained its position that Defendant's requests are overbroad. In particular, Plaintiff noted the broad time scope (January 2011 to the present) and argued certain product information requested (regarding patents, prototypes, etc.) are unrelated to the suit.

In response, Defendant argued Plaintiff had failed to show undue burden, because it had not shown specific problems caused by Defendant's requests. Further, Defendant argued its requests were relevant to the merits of the case and the calculation of alleged damages. Specifically, Defendant contended Plaintiff's financial representations to Bremen related to damages, and Plaintiff's designation of its products in its representations to the bank related to the trade secrets claim. Finally, Defendant stated it had also asked Plaintiff for similar documents.

## II. STANDARD

Federal Rule of Civil Procedure (FRCP) 45(d)(1) states, "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The rule goes on to say district courts "must enforce this duty and impose an appropriate sanction . . . on a party or attorney who fails to comply." *Id.* Rule 45(d)(3)(A) requires courts to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). A subsequent portion of Rule 45(d) permits district courts, in order "[t]o protect a person subject to or affected by a subpoena," to modify or quash a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(3)(B)(i). A "party seeking to quash a subpoena bears the burden to demonstrate that

compliance would be unreasonable or oppressive." *U.S. v. Corbett*, 2008 WL 2095740 at *1 (E.D. Mo. May 16, 2008).

Similarly, FRCP 26(c)(1) allows parties or persons from whom discovery is sought to move for a protective order. The rule requires the moving party to certify that they, in good faith, "conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Fed. R. Civ. P. 26(c)(1). Upon such certification, and a showing of good cause, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.* The rule goes on to provide a number of requirements, prohibitions, and instructions the court can include in its protective order. Fed. R. Civ. P. 26(c)(1)(A)-(H).

## III. DISCUSSION

Plaintiff argues the Bremen Bank subpoena should be quashed for two reasons. First, Plaintiff states the subpoena violates FRCP 45(d)(1) by requesting documents from a non-party (Bremen) when Defendant could have requested the documents directly from Plaintiff [ECF No. 19 at 4-5]. Second, Plaintiff argues the subpoena is "overbroad, unduly burdensome, issued for an improper purpose and not likely to lead to the discovery of admissible evidence" [ECF No. 19 at 6-8]. For reasons stated *infra*, the Court shall grant the Motion and quash the subpoena.

### A. *First Requesting Documents from Plaintiff*

Plaintiff states the Bremen Bank subpoena is improper, because Defendant could have, but did not,[1] request the documents directly from Plaintiff. Plaintiff argues this is "unduly burdensome" and violates FRCP 45(d)(1) [ECF No. 19 at 4-5]. Defendant states it requested "similar information" from both Plaintiff and Bremen Bank [ECF No. 20 at 5-6] and contends,

---

[1] Plaintiff states "the majority of documents" requested in the Bremen Bank subpoena "were not requested in Defendant's discovery requests to Plaintiff" [ECF No. 19 at 4].

"Rule 45 does not contain any requirement that a party first seek documents through the opposing party prior to issuing a subpoena to a non-party" [ECF No. 20 at 4].

FRCP 45 allows parties to serve persons with subpoenas that include a "command to produce" documents. *See* Fed. R. Civ. P. 45(a)(1)(A)(iii) and (a)(1)(D). In accordance with Rule 45, "a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c). There is no "absolute rule providing that a party must first seek those documents from an opposing party before seeking them from a non-party." *E.E.O.C. v. Premier Well Services, LLC*, 2011 WL 2198285 at *1 (E.D. Ark. June 3, 2011).

However, a court "must limit the frequency or extent of discovery otherwise allowed by [the rules] if it determines . . . the discovery sought is unreasonably cumulative or duplicative, or *can be obtained from some other source* that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C)(i) (emphasis added). District courts in the Eighth Circuit, on the basis of both FRCP 26(b) and 45(d), have found it practical in certain situations to require the subpoenaing party to make an attempt to obtain information from a party first. *See, e.g.*, *Ingersoll v. Farmland Foods, Inc.*, 2011 WL 1131129 at *8 (W.D. Mo. March 28, 2011) (finding the discovery sought from the non-party to be "overly broad and unduly burdensome" and citing FRCP 26(b)(2)(C)(i)) ("[W]hile non-party discovery can be undertaken, at this point in time there is no indication that plaintiffs cannot get the same or similar information from defendant[.]"); *Am. Broad. Cos., Inc. v. Aereo, Inc.*, 2013 WL 5276124 at *6 (N.D. Iowa Sept. 17, 2013) (emphasizing potential harm to the non-party but also mentioning CBS' (a party's) equal access to the requested documents) ("The Court reaches the same conclusion regarding Aereo's request for all documents relating to CBS' investment in Syncbak, and the negotiations leading to that investment. Moreover, CBS has equal access to those documents, and Aereo has

asked CBS to produce the documents in the underlying action."); *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011) ("If the party seeking the information can easily obtain the same information without burdening the nonparty, the court will quash the subpoena.") (citing *Cantrell v. U.S. Bioservices Corp., et al.*, 2009 WL 1066011 at *2 (W.D. Mo. 2009), where the court found a subpoena to be "unduly burdensome" on a non-party under FRCP 45).

On this point, the Court agrees with Plaintiff. Defendant should attempt to procure the requested documents from Plaintiff before serving Bremen Bank with a subpoena. Here, there is no indication the discoverable information to which Defendant is entitled cannot be produced by Plaintiff. Requiring Defendant to initially seek the information at issue from Plaintiff relieves Bremen Bank (a non-party) from a burdensome task and provides Plaintiff with better opportunities to object to requests for the production of sensitive documents. Because Defendant can seemingly obtain the same or similar information from Plaintiff without burdening Bremen Bank, the Court will quash the Bremen subpoena.

### B.   *Issues of Overbreadth, Undue Burden, and Standing*

Plaintiff argues the Bremen subpoena is overbroad and burdensome, specifically pointing to the breadth of both the subpoena's general request ("any and all documents, records, and things regarding EnviroPAK Corporation") as well as its "subsequent itemized requests" [ECF No. 19 at 6].[2] Further, Plaintiff contends the subpoena's requests are "unlikely to lead to the discovery of any relevant information," arguing the requested documents are "unrelated to the claims set forth in Plaintiff's [Complaint] and unrelated to any viable legal defense to such

---

[2] Plaintiff states, "This request is the very definition of unlimited in scope as Plaintiff does not even attempt to tailor its requests to information either relevant to this action or likely to lead [to] the discovery of relevant information" [ECF No. 19 at 6].

claims" [ECF No. 19 at 7]. Plaintiff concludes that Defendant's purpose in issuing the Bremen Bank subpoena is to embarrass Plaintiff and damage its relationship with its bank [ECF NO. 19 at 6-7].

Defendant responds Plaintiff lacks standing to seek the quashing of the subpoena served upon Bremen Bank, arguing a challenge to a subpoena on the ground of undue burden "is for the recipient to assert" [ECF No. 20 at 4-5]. Additionally, Defendant contends the requested documents are relevant to Plaintiff's claims, in that they relate to the parties' negotiations on the potential acquisition of Plaintiff, product information associated with the trade secrets claim, and the amount of damages allegedly incurred [ECF No. 20 at 6-7].

In some cases, parties lack standing to challenge subpoenas served on non-parties. For example, Defendant cites *Mayhall v. Berman & Rabin, P.A*, which states, "The Court agrees that Defendant lacks standing to challenge this third party subpoena as burdensome or duplicative, *because Defendant has not shown that the proposed deposition is likely to elicit information subject to a privilege or right belonging to Defendant*." 2013 WL 4496279 at *3 (E.D. Mo. Aug. 21, 2013) (emphasis added). Similarly, "a motion to quash or modify a subpoena duces tecum may only be made by the party to whom the subpoena is directed except where the party seeking to challenge the subpoena has a personal right or privilege with respect to the subject matter requested in the subpoena." *National Ben. Programs, Inc. v. Express Scripts, Inc.*, 2011 WL 6009655 at *3 (E.D. Mo. Dec. 1, 2011) (internal quotations omitted) (finding the moving party "clearly has a 'personal right' to control the disclosure of its financial and business records").

Here, Plaintiff appears to have standing to challenge the Bremen Bank subpoena on the ground of undue burden. Defendant's subpoena, as currently written, is highly intrusive into Plaintiff's financial affairs. The subpoena requests Bremen to produce "any and all" account

applications, credit applications, financial statements provided by Plaintiff to secure financing or credit, financial projections, cash flow projections, business proposals, and documents used by Plaintiff to secure financing or credit [ECF No. 19-1 at 4-5]. In accordance with the aforementioned case law, this Court finds the moving party to have a "personal right" to control the disclosure of its financial documents. Specifically, Plaintiff has a personal right regarding the records kept at Bremen Bank, and does not lack standing to make its Motion to Quash.

Regarding the merits of the motion, FRCP 26(b) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" Fed. R. Civ. P. 26(b)(1). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." *Id.* However, "[a]ll discovery is subject to the limitations imposed by Rule 26(b)(2)(C)."[3] *Id.* Further, "[e]ven if relevant, discovery is not permitted where there is no need shown or compliance would be unduly burdensome, or where harm to the person from whom the discovery is sought outweighs the need of the person seeking the information." *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999) (internal citation omitted). "[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Id.* at 927 (internal citation omitted). Again, a court may quash or modify a subpoena that requires the disclosure of "a trade secret or other confidential research, development, or commercial information[.]" Fed. R. Civ. P. 45(d)(3)(B)(i). Similarly, courts must enforce a party's duty to avoid imposing undue burdens, and a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1) and 45(d)(1).

---

[3] The Court has already discussed, in Section A of Part III, the discovery limitations mandated by Rule 26(b)(2)(C)(i).

Here, the Court finds Defendant's subpoena requests to be in need of reform. In their current state, certain requests within the Bremen subpoena may not be reasonably calculated to produce admissible evidence. For instance, the subpoena seeks documents dating back to January 1, 2011, but the two parties did not begin their negotiations until May 2013. The breadth of Defendant's requests substantiates the Court's previously-discussed concern with the burden thrust upon the Bremen (a non-party). Similarly, such breadth creates the danger of subjecting Plaintiff to an undue burden if Defendant serves Plaintiff with similarly-phrased requests. With the Bremen subpoena quashed, some changes in form must be made if Defendant attempts to seek further production of the relevant documents from Plaintiff.

A party from whom information is sought has a responsibility to produce that information, provided the request is not unduly burdensome. The definition of "document" proffered by Defendant is so broad, that it would be impractical to expect Plaintiff to respond without producing a significant amount of information which will not lead to production of admissible evidence. Defendant must be more specific in its requests so Plaintiff can take action and produce information Defendant is entitled to receive to pursuit its claims or defenses. However, the Court will not place a burden on Plaintiff to produce thousands of documents that could not lead to admissible evidence.

### C. Conclusion

If Defendant intends to pursue additional production of documents from Plaintiff regarding the information at issue in the Bremen subpoena, it must file within ten days a request for production, the scope of which should not exceed proper chronological and subject matter boundaries. The Court emphasizes that none of the requests, in their current form, are in a form the Court will approve. The Court has reviewed each request and, in an attempt to provide

Defendant guidance concerning acceptable scope, makes suggested changes below (with the number preceding each request indicating the original request upon which the revised request is based).[4]

      6. Any and all financial statements provided by EnviroPAK Corporation to any financial institution for purposes of securing financing or credit since January 1, 2012.

      7. Any and all financial projections prepared by EnviroPAK Corporation since January 1, 2012.

      8. Any and all cash flow projections prepared by EnviroPAK Corporation since January 1, 2012.

      10. List the names of officers and employees who participated in the negotiations over the potential acquisition of EnviroPAK, and for each person, produce any writing, including e-mails, if any, produced by such individual since January 1, 2012.

      12. State whether Plaintiff has made any claims against Zenfinity Capital since January 1, 2012, and if so, state the specific claims made.

      13. List the names of all financial institutions from which EnviroPAK Corporation has sought financing or credit since January 1, 2012.

      14. State whether EnviroPAK claims to own or use any patents, production tooling processes, SolidWorks 3D software, or CNC technology, which EnviroPAK intended to be part of any acquisition by Zenfinity or any other corporation or entity.

      This is not to suggest Defendant is not entitled to make other requests for production of documents.

      Accordingly,

---

[4] Because of their overbreadth, the Court does not address requests 2-5, 9, or 11.

**IT IS HEREBY ORDERED** that "Plaintiff's Motion To Quash Subpoenas, Or, In The Alternative, For Protective Order" [ECF No. 18] is **GRANTED.**

Dated this  22nd  Day of September, 2014.

_E. Richard Webber_
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE