# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

ENVIROPAK CORPORATION,       )
                               )
         Plaintiff,         )
                               )
     v.                  )        No.       4:14CV00754 ERW
                               )
ZENFINITY CAPITAL, LLC, *et al.*,   )
                               )
        Defendants.     )

## MEMORANDUM AND ORDER

This matter comes before the Court on "Defendants Zenfinity Capital, LLC, Zenfinity Capital Group, LLC, Footprint, LLC and Jared Bearinger's Motion to Dismiss" [ECF No. 62].

## I.     BACKGROUND

This lawsuit arises out of negotiations between Defendant Zenfinity Capital, LLC ("Zenfinity"), and Plaintiff EnviroPAK Corporation, a manufacturer of protective molded pulp packaging. Plaintiff alleges it was contacted by Zenfinity, in May 2013, regarding a proposal to purchase Plaintiff. Plaintiff contends, to aid in the negotiation process, the parties entered into a "Mutual Confidentiality Agreement" ("Zenfinity Agreement"), which prohibited Zenfinity's disclosure and use of "Confidential Information," including customer information and proprietary information [*See* ECF No. 52-1 at ¶¶ 1-6]. The Zenfinity Agreement dictated neither party would interfere with the employment relationships of the other party's employees [*See* ECF No. 52-1 at ¶ 7]. Plaintiff states it rejected Zenfinity's ensuing purchase offer in July 2013.

In April 2014, Plaintiff initiated this lawsuit by filing its "Complaint" [ECF No. 1]. The Complaint asserted two breach of contract claims (Counts I and II), a claim for tortious interference with a business relationship (Count III), and a violation of the Missouri Uniform

Trade Secrets Act for misappropriation of trade secrets (Count IV). Specifically, Plaintiff alleged Zenfinity violated the Zenfinity Agreement by hiring Plaintiff's now former Vice President of Manufacturing, Rodney Heenan, who was previously bound by a "Confidentiality, Non-Disclosure, and Non-Compete Agreement" with Plaintiff. The Complaint also alleged Heenan has disclosed, and continues to disclose, confidential information to Zenfinity, including trade secrets and customer information.

In October, 2014, Plaintiff filed its "First Amended Complaint" [ECF No. 41] and "Second Amended Complaint" [ECF No. 52], which include additional claims and additional defendants. Specifically, Plaintiff now also brings claims against Zenfinity Capital Group, LLC ("Zenfinity Group"); Footprint, LLC ("Footprint"); Footprint MX S. De. R.L. de C.V. ("Footprint MX"); and Jared Bearinger (a/k/a Gene Bearinger). Count I of the Second Amended Complaint is a breach of contract claim against Zenfinity. Plaintiff alleges Zenfinity breached the terms of the Zenfinity Agreement by: (1) "soliciting for employment [Rodney] Heenan, [William] Noble, and Josh Heenan on behalf of Footprint and encouraging or causing [those individuals] to leave the employ or terminate their relationship with Plaintiff"; (2) "soliciting, through its agent Josh Heenan, various employees of Plaintiff on behalf of Footprint and encouraging, through its agent Josh Heenan, those employees to leave the employ or terminate their relationship with Plaintiff"; and (3) "using and disclosing Plaintiff's confidential information, including trade secrets and customer information, as defined in the Zenfinity Agreement, to other[s], including but not limited to Zenfinity Group, Footprint and Footprint MX, and otherwise failing to protect and safeguard the confidentiality of the Confidential Information" [ECF No. 52 at ¶¶ 86-88]. Count II alleges "tortious interference with business relationships and contracts" by all Defendants [ECF No. 52 at ¶¶ 92-102]. Specifically, Plaintiff

claims Defendants improperly interfered with various contracts and "business relationships" between Plaintiff and employees Rodney Heenan ("Heenan"), William Noble, and Josh Heenan. Count III is a separate allegation of "tortious interference with a contract" against Zenfinity Group, Footprint, Footprint MX, and Bearinger [ECF No. 52 at ¶¶ 103-09]. Specifically, Plaintiff claims these four Defendants played a role in Zenfinity's breach of the Zenfinity Agreement. Count IV alleges Zenfinity and Bearinger violated the Missouri Uniform Trade Secrets Act ("MUTSA") by disclosing trade secrets to Zenfinity Group, Footprint, and Footprint MX [ECF No. 52 at ¶¶ 110-19]. Count V alleges all Defendants engaged in "civil conspiracy to violate the Missouri Uniform Trade Secrets Act" [ECF No. 52 at ¶¶ 120-23]. Count VI alleges all Defendants engaged in "civil conspiracy to tort[i]ously interfere with contracts" [ECF No. 52 at ¶¶ 124-30]. Finally, Count VII alleges a violation of the Sherman Antitrust Act by all Defendants [ECF No. 52 at ¶¶ 131-37].

On November 6, 2014, Defendants Zenfinity, Zenfinity Group, Footprint, and Bearinger filed the pending Motion to Dismiss [ECF No. 62]. Specifically, these Defendants ask the Court to dismiss Counts II-VII of the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.    STANDARD

Under FRCP 12(b)(6), a party may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The notice pleading standard of FRCP 8(a)(2) requires a plaintiff to give "a short and plain statement showing that the pleader is entitled to relief." To meet this standard and to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and

citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A court accepts "as true all of the factual allegations contained in the complaint," and affords the non-moving party "all reasonable inferences that can be drawn from those allegations" when considering a motion to dismiss. *Jackson v. Nixon*, 747 F.3d 537, 540-41 (8th Cir. 2014) (internal quotations and citation omitted). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 454 (8th Cir. 2010) (internal citation omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Additionally, "some factual allegations may be so indeterminate that they require further factual enhancement in order to state a claim." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

A well-pleaded complaint may not be dismissed even if it appears proving the claim is unlikely and if the chance of recovery is remote. *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007). However, if a claim fails to allege one of the elements necessary to recovery on a legal theory, that claim must be dismissed for failure to state a claim upon which relief can be granted. *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011). Bare assertions constituting merely conclusory allegations failing to establish elements necessary for recovery will not suffice. *See id.* ("Plaintiffs, relying on facts not in the complaint, make bare assertions that [defendants] were not just lenders, but owners that controlled the RICO enterprise . . . these assertions are more of the same conclusory allegation . . . "). Courts must assess the plausibility of a given claim with reference to the plaintiff's allegations as a whole, not in terms of the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d

893, 896 n.4 (8th Cir. 2010) (internal citation omitted). This inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

Zenfinity, Zenfinity Group, Footprint, and Bearinger (collectively, "Defendants") move to dismiss Counts II-VII of Plaintiff's Second Amended Complaint. Because many of Plaintiffs' allegations relate to trade secrets, and because Defendant argues for the preemption of certain claims related to trade secrets, the Court will first address Count IV (MUTSA violation) before going back to Count II and working through the remaining claims. For the reasons stated infra, the Court shall grant the Motion to Dismiss, in part.

### A.    *Count IV (MUTSA)*

In Count IV, Plaintiff alleges the misappropriation of its trade secrets by Heenan, Zenfinity, and Bearinger. Specifically, the Second Amended Complaint states, "Heenan misappropriated trade secrets acquired in the course of his employment with Plaintiff, by disclosing the trade secrets to Zenfinity, Zenfinity Group, Bearinger, Footprint, Footprint MX and others in order to usurp the business of Plaintiff" [ECF No. 52 at ¶ 115]. Similarly, Plaintiff alleges "Zenfinity and Bearinger misappropriated trade secrets acquired in the course of negotiations with Plaintiff and acquired through Heenan's misappropriation of the trade secrets by disclosing the trade secrets to Zenfinity Group, Footprint and Footprint MX in order to usurp the business of Plaintiff" [ECF No. 52 at ¶ 116]. However, the heading for Count IV clearly states Plaintiff is bringing MUTSA claims only against Zenfinity and Bearinger.

Defendants argue Plaintiff's MUTSA claim should be dismissed for failure to plead "the existence of its trade secrets with sufficient particularity" [ECF No. 67 at 10]. Defendants claim

an adequate pleading of a MUTSA claim requires "more than 'broad and general allegations regarding misappropriation of trade secrets and confidential information'" [ECF No. 67 at 11 (citing *Young Dental Manufacturing Co. v. Q3 Special Products, Inc.*, 891 F. Supp. 1345, 1349 (E.D. Mo. 1995)].  Stating Plaintiff has failed "to provide any descriptive information about the methods and processes it utilizes to produce its goods, or how its methods and processes differ from or [are] unknown by its competitors," Defendants conclude, "Plaintiff's vague and conclusory labels are insufficient to state a claim under MUTSA" [ECF No. 67 at 11-12].

Plaintiff responds by refuting Defendants' interpretation of case law and argues it has sufficiently alleged its trade secrets in the Second Amended Complaint by stating the following:

- "Plaintiff is a manufacturer of protective molded pulp packaging and utilizes various confidential and proprietary processes in the manufacturing of its products" [ECF No. 52 at ¶ 26].

- "Plaintiff's methods and industrial processes it utilizes to produce its goods are trade secrets . . . in that they derive independent economic value from not being generally known to and not being readily ascertainable by proper means by others" [ECF No. 52 at ¶ 111].

- "Plaintiff employed significant efforts, reasonable under the circumstances, to maintain secrecy of its methods and industrial processes it utilizes to produce its goods, by, among other things, requiring employees and business, including Heenan and Zenfinity, to enter into confidentiality agreements" [ECF No. 52 at ¶ 114].

Much of the authority cited by Defendants on this point involved summary judgment, and none of the cases from within the Eighth Circuit expressly lay out a specific "particularity" requirement for the pleading stage.  Indeed, in *Young Dental Manufacturing Co. v. Q3 Special Products, Inc.*, a case upon which Defendants rely heavily, the Court suggests it would be more prudent to wait until the summary judgment stage to evaluate the sufficiency of the particularity of Plaintiff's claimed trade secrets.  In that case, this Court not only mentioned the "broad and general allegations" in the complaint, but it also emphasized the plaintiff's failure to

subsequently identify trade secrets during and following discovery. *Young Dental*, 891 F.Supp. at 1349-52 ("In fact, at his deposition, Dental Young's President, G. Richmond, could not identify a single trade secret or piece of confidential information that he was aware of that defendant Carron had taken or used."). Thus, although the Court agrees Plaintiff's current allegations are dangerously general, the Court concludes Plaintiff has not failed to state a claim under MUTSA for lack of particularity. However, if Plaintiff fails to make more specific identifications by the summary judgment stage, this Court will be ready to apply *Young Dental* at that time. Therefore, on this issue, Defendants' Motion is denied.

**B.      *Count II (Tortious Interference Regarding Heenan, Noble, and Josh Heenan)***

Count II alleges "tortious interference with business relationships and contracts" by all Defendants [ECF No. 52 at ¶¶ 92-102]. Specifically, Plaintiff makes the following allegations of "intentional interference": (1) "Defendants intentionally interfered with Plaintiff's business relationships with Heenan, Noble, and Josh Heenan by soliciting for employment or retention and/or employing or retaining Heenan, Noble, and Josh Heenan" [ECF No. 52 at ¶ 96]; (2) "Footprint Group intentionally interfered with [the Heenan Agreements, Noble Agreement, and Josh Heenan Agreement] by inquiring into Plaintiff's customer information and trade secrets from Heenan, Noble, and Josh Heenan, and utilizing Plaintiff's trade secrets in an effort to usurp Plaintiff's business in St. Louis, Missouri" [ECF No. 52 at ¶ 97]; and (3) "Footprint Group intentionally interfered with [the Josh Heenan Agreement] by directing Josh Heenan to induce or attempt to induce employees of Plaintiff to gain or seek employment elsewhere, including with Footprint Group" [ECF No. 52 at ¶ 98]. Plaintiff claims Defendants' "intentional interference" resulted in the following: (1) "Heenan breached the Heenan Consultant Agreement by terminating the agreement prior to its termination date of October 31, 2013"; (2) "Heenan,

Noble, and Josh Heenan ended their business relationship with Plaintiff"; (3) "Heenan breached the Heenan Agreements by disclosing Plaintiff's customer information and trade secrets to Footprint Group"; (4) "Noble breached the Noble Agreement by disclosing Plaintiff's customer information and trade secrets to Footprint Group"; and (5) "Josh Heenan breached the Josh Heenan Agreement by disclosing Plaintiff's customer information and trade secrets to Footprint Group" [ECF No. 52 at ¶ 99]. Regarding the impropriety of the alleged "intentional interference," Plaintiff makes the following arguments: (1) "Defendants' intentional interference with the Heenan Agreements, Noble Agreement, and Josh Heenan Agreement was improper and therefore unjustified as it was done in order to obtain and misappropriate Plaintiff's trade secrets and confidential customer information which Heenan, Noble, and Josh Heenan possessed" [ECF No. 52 at ¶ 100]; and (2) "Defendants' intentional interference with the Heenan Agreements, Noble Agreement, and Josh Heenan Agreement was improper and therefore unjustified as it was with disregard and in breach of Paragraph 7 of the Zenfinity Agreement, prohibiting Zenfinity from soliciting Plaintiff's employees or independent contractors" [ECF No. 52 at ¶ 101].

Under Missouri law, the elements of tortious interference with a contract or business expectancy are: (1) a contract or valid business expectancy; (2) the defendant's knowledge of the contract or relationship; (3) an intentional interference, by the defendant, inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages. *Wash Solutions, Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 895 (8th Cir. 2005) (internal citation omitted).

### 1. Preemption Under MUTSA

Defendants argue Plaintiff's tortious interference claim in Count II "is preempted to the extent it relies upon the same allegations set forth in its" MUTSA claim [ECF No. 67 at 7]. After citing to MUTSA and relevant case law, Defendants emphasize the factual similarities

between the allegations found in Count IV and Count II. Defendants conclude, "[Because] Plaintiff seeks to support its tortious interference claim with facts derivative of its MUTSA claim, these claims are preempted by MUTSA" [ECF No. 67 at 8]. In response, Plaintiff argues the agreements at issue in Count II protect "a larger range of Plaintiff's confidential information than does MUTSA," and, thus, are not preempted by MUTSA [ECF No. 70 at 8].

MUTSA "displace[s] conflicting tort, restitutionary, and other laws . . . providing civil remedies for misappropriation of a trade secret." Mo. Rev. Stat. § 417.463.1. Federal courts in Missouri have interpreted this provision to preempt "civil claim[s] that are derivative of a claim of misappropriation of trade secrets[.]" *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, No. 4:00CV70 CEJ, 2002 WL 32727076, at *4 (E.D. Mo. Feb. 25, 2002). Common-law claims are preempted as derivative "if they are based on facts related to the misappropriation of trade secrets claim." *Reliant Care Mgmt., Co. v. Health Sys.*, No. 4:10CV38 CDP, 2011 U.S. Dist. LEXIS 105613, at *3-4 (E.D. Mo. Sept. 19, 2011) (citing *Secure Energy, Inc. v. Coal Synthetics, LLC*, No. 4:09CV1719 JCH, 2010 WL 1691454 (E.D. Mo. April 27, 2010) (finding the plaintiff's tortious interference claim, which alleged the intentional misappropriation of the plaintiff's business information for the benefit of the defendant, to be preempted by MUTSA); *Bancorp Servs., L.L.C.*, 2002 WL 32727076, at *4; and *Hallmark Cards v. Monitor Clipper Partners*, 757 F.Supp.2d 904, 917 (W.D. Mo. 2010)). This precludes plaintiffs from merely restating their trade secret claims as separate tort claims, and in determining whether to find a claim preempted under MUTSA, courts must "look beyond the label of the claims to the facts being asserted in support of the claims." *Secure Energy, Inc.*, 2010 WL 1691454, at *1 (internal quotations omitted). However, "[f]or preemption to be triggered, the property that has been stolen/misappropriated must be a trade secret: otherwise, the Trade Secret Act has no

application." *Hallmark Cards*, 757 F.Supp.2d at 917. Put another way, MUTSA will not preempt a claim if the information at issue does not rise to the level of a statutorily-defined trade secret. *Id.* Under MUTSA, a trade secret is defined as:

> [I]nformation, including but not limited to, technical or nontechnical data, a formula, pattern, compilation, program, device method, technique, or process, that:
> (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; and
> (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Mo. Rev. Stat. § 417.453(4).

The Court finds a certain degree of preemption to be appropriate for Count II. In support of its tortious interference claim in Count II, Plaintiff relies partially on alleged "inquiries into" and "disclosure of" "trade secrets" [ECF No. 52 at ¶¶ 97, 99]. Further, the misappropriations relevant to both Count IV and Count II stem from the same alleged scheme. Plaintiff's MUTSA claim (Count IV) involves the receipt of trade secrets by Zenfinity and Bearinger, through Heenan's misappropriation of those trade secrets, followed by the misappropriation of the same trade secrets by Zenfinity and Bearinger through their disclosure of the trade secrets to Zenfinity Group, Footprint, and Footprint MX [ECF No. 52 at ¶ 116]. Similarly, portions of Count II, as well as introductory paragraphs incorporated by reference into that count, allege the disclosure of trade secrets by Heenan, Noble, and Josh Heenan to Zenfinity, Bearinger, Footprint Group, and "Defendants" generally [ECF No. 52 at ¶¶ 68, 71-73, 79, 80, 82, 97, 99]. A holistic view of the Second Amended Complaint reveals an alleged massive scheme amongst Heenan, Noble, Josh Heenan, and Defendants involving the disclosure and utilization of Plaintiff's trade secrets, "customer information" [ECF No. 52 at ¶¶ 79, 97, 99], "confidential information" [ECF No. 52

at ¶¶ 68, 72, 73, 79, 80, 82], and "confidential business information" [ECF No. 52 at ¶ 71].[1]

Clearly, at least part of Plaintiff's tortious interference claim in Count II is factually derivative of the MUTSA claim in Count IV. Thus, to the extent Count II relies on or is based on the misappropriation of trade secrets, Count II is preempted by MUTSA.

However, as discussed above,[2] Plaintiff has not clearly or specifically described the information it believes to constitute trade secrets. Further, it is unclear at this time whether the type of information Plaintiff describes as "customer information" [ECF No. 52 at ¶¶ 79, 97, 99], "confidential information" [ECF No. 52 at ¶¶ 68, 72, 73, 79, 80, 82], or "confidential business information" [ECF No. 52 at ¶ 71] constitutes trade secrets[3] under MUTSA. As a practical matter, until this Court is able to make a determination as to whether the information to which Plaintiff alludes qualifies as a trade secret, the Court cannot rule on the precise extent to which Count II is preempted. At the very least, Plaintiff may not use the term "trade secret[s]" in reference to or in support of Count II. Further, if, in the future, this Court finds certain information to constitute a trade secret under MUTSA, in support of Count IV or otherwise, such information may not be used or referenced to form any type of basis or support for the tortious interference claim found in Count II. Therefore, on this issue and to this extent, Defendants' Motion is granted.

## 2. Improper Inducement/Means

Defendants claim Plaintiff has not alleged Defendants "*wrongfully* induced" or used

---

[1] The allegations containing these phrases either appear directly within Count II or appear earlier in the Second Amended Complaint but were incorporated by reference into Count II [ECF No. 52 at ¶ 92], meaning any of those allegations could be cited by Plaintiff in support of Count II.

[2] *See supra*, Part III., Section A.

[3] Cases interpreting MUTSA clearly show customer information may be found to constitute a trade secret. *See Synergetics, Inc. v. Hurst*, 477 F.3d 949 (8th Cir. 2007); *Conseco Finance Servicing Corp. v. North American Mortgage Co.*, 381 F.3d 811 (8th Cir. 2004); *Brown v. Rollet Bros. Trucking Co., Inc.*, 291 S.W.3d 766 (Mo. App. E.D. 2009).

"*improper means* to induce" Heenan, Josh Heenan, or Noble to engage in the breaches at issue in

Count II [ECF No. 67 at 6-7 (emphasis added)].  Stated another way, Defendants are contending

Plaintiff has failed to sufficiently allege the "absence of justification" element for Count II [*See*

ECF No. 72 at 5].  In response, Plaintiffs emphasizes the allegations of impropriety found in

Paragraphs 100 and 101 of the Second Amended Complaint, and insists the alleged connection

between Zenfinity's and the other Defendants' alleged actions in the supposed solicitation of

Plaintiff's employees is enough to constitute "improper means" [ECF No. 70 at 6-7].  Plaintiff

states, "That Zenfinity Capital, LLC was prohibited from soliciting Heenan, Josh Heenan, and

Noble for employment on behalf of itself or the other Defendants, and that Defendants' acts were

done in conjunction with such solicitations, is enough, in and of itself, to constitute improper

means.  Such allegations throughout the Complaint are sufficient to plead absence of

justification" [ECF No. 70 at 7 (citing *Envirotech, Inc. v. Thomas*, 259 S.W.3d 577, 590 (Mo.

App. E.D. 2008)].

In actions for tortious interference, "[i]f the defendant has a legitimate interest, economic

or otherwise, in the contract or expectancy sought to be protected, then the plaintiff must show

that the defendant employed improper means in seeking to further only his own interests."

*Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 317 (Mo. banc 1993) (internal citation

omitted).  "Courts since *Nazeri* have interpreted that case to mean that plaintiffs must allege and

provide in all tortious interference cases that the defendant employed improper means."  *Clinch*

*v. Heartland Health*, 187 S.W.3d 10, 16 (Mo. App. W.D. 2006) (citing *Carter v. St. John's*

*Regional Medical Center*, 88 S.W.3d 1, 14 (Mo. App. S.D. 2002)).  "Improper means" can be

"any independently wrongful act," including "fraud, deceit, coercion," "threats, violence,

trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act

recognized by statute or the common law." *Central Trust and Inv. Co. v. SignalPoint Asset Management*, LLC, 422 S.W.3d 312, 324 (Mo. Banc 2014) (internal citation omitted); *Clinch*, 187 S.W.3d at 16; *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 252 (Mo. banc 2006).

Here, Plaintiff has failed to sufficiently allege "improper means." Because the Court will not allow Plaintiff to support this tortious interference claim with allegations relating to trade secrets, the only remaining alleged impropriety regarding Count II proffered by Plaintiff is: (1) Defendants' intentional interference was "improper and therefore unjustified as it was done in order to obtain . . . Plaintiff's . . . confidential customer information" [ECF No. 52 at ¶ 100];[4] and (2) Defendants' intentional interference was "improper and therefore unjustified as it was with disregard and in breach of Paragraph 7 of the Zenfinity Agreement, prohibiting Zenfinity from soliciting Plaintiff's employees or independent contractors" [ECF No. 52 at ¶ 101].

As to Paragraph 100, Defendants' alleged obtaining or using of "confidential customer information" may only be referenced in this way if the information turns out to not constitute a trade secret, meaning reference to it would not offend MUTSA preemption principles. Even then, Plaintiff's allegation provides no explanation as to why or how the interference was itself "improper" or was done in an "improper" way under Missouri tortious interference law. Without the trade secret aspect, Paragraph 100 essentially reads, "Defendants' tortious interference was improper because they obtained and used some of our non-trade secret information." To sufficiently plead a tortious interference claim against a competitor, Plaintiff needed to allege more specifically how or why the actions or means were improper. Thus, Paragraph 100 will not suffice as an allegation of "improper means" for Count II.

As to Paragraph 101, Plaintiff claims Defendants' interference is improper because it

---

[4] Such a reference to "confidential customer information" assumes the information at issue does not constitute a trade secret.

constituted a breach of the Zenfinity Agreement. Admittedly, as to Zenfinity alone, this allegation provides a legal wrongdoing to serve as the basis of Plaintiff's "improper means" argument. Specifically, Zenfinity has allegedly broken its own contract by interfering with and inducing the breach of the Heenan and Noble Agreements. However, the interference alleged, i.e., inducing breaches in the Heenan and Noble agreements by soliciting those individuals for employment [see ECF No. 52 at ¶ 96], is itself the breach of the contract referenced as the "improper means." In essence, as to Zenfinity, Paragraph 101 states, "Zenfinity's breaching of the Zenfinity Agreement (the interference) is improper because it constituted a breach of the Zenfinity Agreement. This argument is circular, and Plaintiff has failed to provide an *independent* legal wrongdoing to serve as the basis of its impropriety allegation directed toward Zenfinity. Further, because none of the other Defendants are parties to or are bound by the Zenfinity Agreement, the breach of the Zenfinity Agreement's prohibitions is not a legal basis for arguing impropriety or wrongdoing on the part of those other Defendants. Thus, Paragraph 101 will not suffice as an allegation of "improper means" for Count II.

In sum, because neither of Plaintiff's proffered allegations of impropriety suffice to properly plead "improper means,"[5] Plaintiff has failed to establish the "absence of justification" element. Therefore, Plaintiff has failed to state a claim against any Defendants for "tortious interference with business relationships and contracts" under Count II. Count II is dismissed.

In this way, Defendants' Motion is granted.

---

[5] As noted above, Plaintiff relies on *Envirotech, Inc. v. Thomas* to argue it has sufficiently pled improper means [*See* ECF No. 70 at 7]. However, in that case, the Missouri Court of Appeals' finding of improper means was at least partially based on the plaintiff alleging the defendants had interfered "in order to further a conspiracy to defraud the State of Missouri," concluding, "This allegation, if proven, would establish improper means." *Envirotech*, 259 S.W.3d at 591. Plaintiff fails to acknowledge this aspect of that court's ruling, and as discussed above, Plaintiff has failed to make allegations of similarly wrongful and improper means here.

*C.*     **Count III (Tortious Interference Regarding the Zenfinity Agreement)**

Count III alleges "tortious interference with a contract" against Zenfinity Group, Footprint, Footprint MX, and Bearinger [ECF No. 52 at ¶¶ 103-09]. Specifically, Plaintiff claims these four Defendants played a role in Zenfinity's breach of the Zenfinity Agreement.[6] In particular, Plaintiff states these four Defendants "intentionally interfered with the Zenfinity Agreement by, in concert with Zenfinity and others: a. Soliciting Heenan, Noble, and Josh Heenan for employment; b. Thereafter hiring or retaining Heenan and Josh Heenan; and c. Encouraging or causing Heenan, Noble, and Josh Heenan, to leave the employ of Plaintiff" [ECF No. 52 at ¶ 106]. Plaintiff also alleges these four Defendants "intentionally interfered with the Zenfinity Agreement by inquiring into Plaintiff's customer information and trade secrets and utilizing Plaintiff's trade secrets in an effort to usurp Plaintiff's business in St. Louis, Missouri" [ECF No. 52 at ¶ 107]. Regarding the impropriety of the alleged "intentional interference," Plaintiff argues the "intentional interference with the Zenfinity Agreements was improper and therefore unjustified as it was done in order to obtain and misappropriate Plaintiff's trade secrets and the confidential customer information Zenfinity possessed and to gain an unfair business advantage over Plaintiff and employ several of Zenfinity's employees" [ECF No. 52 at ¶ 108].

### 1.     Preemption Under MUTSA

As with Count II, Defendants argue, "Plaintiff's tortious interference claim [in Count III] is derivative of its MUTSA claim, and [is] therefore preempted by MUTSA" [ECF No. 67 at 10]. And as with Count III, the Court agrees preemption is warranted, to a certain degree.

The tortious interference claim in Count III is based on Zenfinity's violation of the Zenfinity Agreement. One such violation alleged by Plaintiff is Zenfinity's use and disclosure of

---

[6] The alleged breaches of the Zenfinity Agreement are discussed under Count I [*See* ECF No. 52 at ¶¶ 86-88].

"Plaintiff's confidential information, including *trade secrets* and customer information, as defined in the Zenfinity Agreement, to other[s], including but not limited to Zenfinity Group, Footprint and Footprint MX, and otherwise failing to protect and safeguard the confidentiality of the Confidential Information" [ECF No. 52 at ¶ 88 (emphasis added)]. Further, as noted above, Count III alleges, "Zenfinity Group, Footprint, Footprint MX, and Bearinger intentionally interfered with the Zenfinity Agreement by inquiring into Plaintiff's customer information and *trade secrets* and utilizing Plaintiff's trade secrets in an effort to usurp Plaintiff's business in St. Louis, Missouri" [ECF No. 52 at ¶ 107 (emphasis added)]. Finally, Plaintiff claims this intentional interference with the Zenfinity Agreement "was improper and therefore unjustified as it was done in order to obtain and misappropriate Plaintiff's *trade secrets* and the confidential customer information Zenfinity possessed" [ECF No. 52 at ¶ 108 (emphasis added)]. Again, these "trade secrets" aspects of Count III are factually derivative of Count IV and based on the same alleged massive secret-sharing scheme. Specifically, both counts invoke the alleged disclosures between Zenfinity and Zenfinity Group, Footprint, Footprint MX, and Bearinger. Therefore, to the extent Count III relies on or is based on the misappropriation of trade secrets, Count III is preempted by MUTSA.

However, as discussed above, Plaintiff has not clearly or specifically described the information it believes to constitute trade secrets. And again, it is unclear at this time whether the type of information Plaintiff describes as "customer information" [ECF No. 52 at ¶ 107], "confidential information" [ECF No. 52 at ¶¶ 68, 72, 73, 79, 80, 82], "confidential business information" [ECF No. 52 at ¶ 71], or "confidential customer information" [ECF No. 52 at ¶ 108] constitutes trade secrets under MUTSA. Until this Court is able to make a determination as to whether the information to which Plaintiff alludes qualifies as a trade secret, the Court cannot

rule on the precise extent to which Count III is preempted. At the very least, Plaintiff may not use the term "trade secret[s]" in reference to or in support of Count III. Further, if, in the future, this Court finds certain information to constitute a trade secret under MUTSA, in support of Count IV or otherwise, such information may not be used or referenced to form any type of basis or support for the tortious interference claim found in Count III. Therefore, on this issue and to this extent, Defendants' Motion is granted.

## 2. Agency Issue

Defendants cite to a Missouri state court case, which states, "An action for inducing a breach of contract will lie against only a third party, not a party to the subject contract." *White v. Land Clearance for Redevelopment Authority*, 841 S.W.2d 691, 695 (Mo. App. W.D. 1992) [ECF No. 67 at 9]. Defendants claim Plaintiff, in the Second Amended Complaint, "treats the Defendants as one unit, and attempts to impute knowledge of one Defendant to the remaining Defendants" [ECF No. 72 at 8]. Further, Defendants argue, "Plaintiff does not allege that these entities caused or induced Zenfinity to breach the Agreement; rather Plaintiff seeks to establish these entities tortiously interfered with the Agreement through its acts as Zenfinity's agents" [ECF No. 67 at 9]. Defendants conclude Count III must "fail" because the entities named in that count "cannot tortiously interfere with the [Zenfinity] Agreement as agents of Zenfinity" [ECF No. 67 at 9].

In response, Plaintiff argues it has merely alleged Defendants are "closely related" and has not alleged an agency relationship amongst Zenfinity and the four Defendants named in Count III. Plaintiff contends it has properly alleged Zenfinity Group, Footprint, Footprint MX, and Bearinger caused or induced Zenfinity to breach the Zenfinity Agreement by "acting in concert" and "working together" with Zenfinity to solicit Plaintiff's employees, including

Heenan, Josh Heenan, and Noble [ECF No. 70 at 10; *see also* No. 52 at ¶ 106].

The Court acknowledges, as pointed out by Defendants, the Second Amended Complaint alleges Zenfinity solicited for employment Heenan, Noble, and Josh Heenan "through its agent or agents" [ECF No. 52 at ¶ 76]. However, Plaintiff neither names these agents nor gives the Court sufficient reason to assume these agents are Zenfinity Group, Footprint, Footprint MX, or Bearinger. In making reasonable inferences in favor of Plaintiff, the Court will not assume any alleged and unnamed "agents" related to the breach of the Zenfinity Agreement were in fact any of the Defendants named in Count III. Contrary to Defendants' argument, Plaintiff does not fail to allege third-party involvement in the alleged breaches of the Zenfinity Agreement. Therefore, on this issue, Defendants' Motion is denied.

### 3. Noble

Defendants state Plaintiff "terminated Noble without cause effective April 9, 2013" [ECF No. 67 at 9]. Because the Zenfinity Agreement did not come into existence until June 16, 2013, Defendants argue they "could not have tortiously interfered with the Agreement through [any] dealings with Noble" [ECF No. 67 at 9]. Plaintiff did not respond to this argument in its briefs.

According to the Second Amended Complaint and its attachments, Defendants' timeline regarding the termination of Noble and the formation of the Zenfinity Agreement is correct [*See* ECF No. 52-7 at 7; No. 52 at ¶ 30]. Because Plaintiff does not allege the Zenfinity Agreement prohibits the solicitation for employment of Plaintiff's *former* employees, it was factually impossible for any Defendants to have interfered with the Zenfinity Agreement by inducing, causing, or acting in concert with Zenfinity to solicit Noble for employment. To the extent Plaintiff alleges there was intentional interference with the Zenfinity Agreement by virtue of the solicitation of Noble for employment, that aspect of Count III is dismissed. Plaintiff may not

make or reference such allegations to form any type of basis or support for the tortious interference claim found in Count III. On this issue, Defendants' Motion is granted.

### D. Count V (Civil Conspiracy to Violate MUTSA)

Count V of the Second Amended Complaint alleges, "Defendants and Heenan entered into an agreement, even prior to Zenfinity's negotiations with Plaintiff, whereby they agreed to misappropriate Plaintiff's trade secrets in violation of [MTUSA] in an effort to usurp Plaintiff's business" [ECF No. 52 at ¶ 121]. Plaintiff further alleges, "In furtherance of this agreement, Heenan disclosed Plaintiff's trade secrets to Zenfinity and Bearinger, and Heenan, Zenfinity, and Bearinger disclosed Plaintiff's trade secrets to Zenfinity Group, Footprint, and Footprint MX, as more fully outlined in Count IV of this Second Amended Complaint" [ECF No. 52 at ¶ 122]. Defendants, again, argue Plaintiff has failed to state a claim under MUTSA. Accordingly, Defendants contend this conspiracy claim "premised on these acts must also fail" [ECF No. 67 at 13]. Plaintiff argues it has sufficiently alleged the underlying MUTSA claim [ECF No. 70 at 13].

Although the Court disagrees with Defendants regarding the sufficiency of the pleadings in Plaintiff's MUTSA claim (Count IV),[7] the Court does find Plaintiff's civil conspiracy claim in Count V to be preempted by MUTSA. Count V is completely factually derivative of Count IV and based on the same alleged massive secret-sharing scheme. Indeed, both counts allege the disclosure of trade secrets by Heenan, Zenfinity, and Bearinger to Zenfinity Group, Footprint, and Footprint MX for purposes of usurping Plaintiff's business [ECF No. 52 at ¶¶ 116, 121-22], and as quoted above, Count V specifically refers the reader to the trade secrets allegations in Count IV. Therefore, because of its derivative nature, Count V is wholly preempted by MUTSA.

---

[7] *See supra*, Part III., Section A.

*See Secure Energy, Inc.*, 2010 WL 1691454, at *5 (finding the civil conspiracy claim preempted by MUTSA because the allegations "stated nothing more than an accusation that defendants conspired to take [Plaintiffs'] confidential information by improper means" and because the conspiracy allegations were "a restatement of Plaintiffs' MUTSA allegations"). Accordingly, Count V is dismissed.

### E.    Count VI (Civil Conspiracy to Tortiously Interfere with Contracts)

In support of its second civil conspiracy claim, Plaintiff states, "Defendants entered into an agreement, even prior to Zenfinity's negotiations with Plaintiff, whereby they agreed to intentionally interfere with Plaintiff's business relationships with Heenan, Noble, and Josh Heenan by soliciting for employment and/or employing Heenan, Noble, and Josh Heenan" [ECF No. 52 at ¶ 125]. The Second Amended Complaint further states, "In addition, Defendants agreed to intentionally interfere with the Heenan Agreements, Noble Agreement, and Josh Heenan Agreement by inquiring into Plaintiff's confidential information and trade secrets and utilizing Plaintiff's trade secrets in an effort to usurp Plaintiff's business in St. Louis, Missouri" [ECF No. 52 at ¶ 128]. As with Count V, Defendants argue Plaintiff has failed to state a claim for the underlying tort (tortious interference) and, therefore, contend this conspiracy claim "must also fail" [ECF No. 67 at 13]. Plaintiff argues it has sufficiently alleged the underlying tortious interference claim [ECF No. 70 at 13].[8]

Under Missouri law, "A claim of conspiracy alone is not actionable absent an underlying tort or wrongful act." *Wiles v. Capitol Indemnity Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) (internal citation omitted). And "in the absence of such an underlying tort or wrongful act, a

---

[8] In its response brief, Plaintiff claims this civil conspiracy claim relates to the Zenfinity Agreement [ECF No. 70 at 13], but the Second Amended Complaint clearly states Count VI is about the Heenan and Noble Agreements [ECF No. 52 at 21].

claim for civil conspiracy must fail." *Borders v. Trinity Marine Prods., Inc.*, No. 1:10CV00146 HEA, 2011 WL 1045560, at *4 (E.D. Mo. March 17, 2011) (internal citation omitted). "Although civil conspiracy has its own elements that must be proven, it is not a separate and distinct action." *Central Trust*, 422 S.W.3d at 324 (internal quotation omitted). Consequently, "if tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well." *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996) (internal citation omitted).

Here, as the basis of its civil conspiracy allegations in Count VI, Plaintiff claims intentional interference with the Heenan, Josh Heenan, and Noble Agreements [ECF No. 52 at ¶ 128], as well as with Plaintiff's business relationships with Heenan, Josh Heenan, and Noble [ECF No. 52 at ¶ 125]. However, the only tortious interference count in the Second Amended Complaint relating to these agreements and relationships is Count II, which has been dismissed, and although Count III, the other tortious interference claim, has not been dismissed, it involves only interference with the Zenfinity Agreement. Thus, Plaintiff has failed to state a claim for the tort underlying Count VI. Therefore, Count VI is dismissed. *See Haney v. Fire Ins. Exchange*, 277 S.W.3d 789, 793 (Mo. App. S.D. 2009) (upholding the trial court's dismissal of alleged civil conspiracy for failure to state a claim) ("Plaintiffs' underlying claims having failed, the civil conspiracy claim also fails as a matter of law.") On this issue, Defendants' Motion is granted.

**F.      Count VII (Violation of Sherman Antitrust Act)**

In support of Count VII, Plaintiff alleges, "Defendants conspired to usurp Plaintiff's business relationships with Heenan, Noble, and Josh Heenan and employ those individuals in an effort [to] gather information regarding EnviroPAK's trade secrets and confidential information" [ECF No. 52 at ¶ 132]. Plaintiff adds, "Defendants and Heenan then conspired to utilize the

information and knowledge gathered from Zenfinity's employees and the negotiations with Plaintiff in order to misappropriate Plaintiff's trade secrets and confidential information" [ECF No. 52 at ¶ 133]. Plaintiff states the "collusion" between Heenan and the Defendants "was done in an effort to usurp Plaintiff's business, unfairly recruit its customers utilizing Plaintiff's valuable trade secrets and confidential information, and restrain competition in the molded pulp industry including the St. Louis market" [ECF No. 52 at ¶ 134]. According to the Second Amended Complaint, "Defendants have utilized the information unfairly gathered in the solicitation of various customers of Plaintiff" [ECF No. 52 at ¶ 135]. Plaintiff claims this "conspiracy was entered into by Defendants with the intention of restraining competition in the relevant market – the St. Louis market and the small molded pulp manufacturing industry" [ECF No. 52 at ¶ 136]. Finally, Plaintiff contends:

> Defendants' actions have damaged Plaintiff and restrained competition in the St. Louis market and the molded pulp manufacturing industry by, among other things, unfairly reducing the value of Plaintiff's products and services[,] therefore stifling innovation in the industry and improperly utilizing Plaintiff's confidential customer information gathered to solicit those customers[,] therefore garnering an unfair advantage in the solicitation of those customers.

[ECF No. 52 at ¶ 137]. Although the Second Amended Complaint does not specify the exact provision of the Sherman Act under which Plaintiff seeks relief, the Court infers, based on the phrasing of the allegations, Plaintiff seeks relief under Section 1 of the Sherman Act.[9]

Section 1 of the Sherman Act states, "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Although this provision "could be interpreted to proscribe all contracts," the Supreme Court "has never taken a literal approach to

---

[9] This inference is based on Plaintiff's contention Defendants have "restrained competition," as well as other references to the "restraint" of "competition" [*See* ECF No. 52 at ¶¶ 134, 136-37]

[its] language." *Leegin Creative Leather Products, Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (internal citations and quotations omitted) (brackets in original). Rather, the Supreme Court has made clear: Section 1 "outlaw[s] only *unreasonable* restraints." *Id.* (internal citation and quotations omitted) (emphasis added). Under the "rule of reason" analysis, a party bringing a Section 1 claim must prove: "(1) the existence of a contract, combination[,] or conspiracy, (2) that produced adverse anticompetitive effects within relevant product and geographic markets, (3) that the objects of the conduct pursuant to the contract or conspiracy were illegal, and (4) that the plaintiff was injured as a proximate result of the conspiracy." *Iams Co. v. Falduti*, 974 F.Supp. 1263, 1272 (E.D. Mo. 1997) (internal citations omitted); *H.J. Hodes and Co. v. Triangle Brass and Specialties Co.*, No. 79-0673-CV-W-3, 1979 WL 1804, at *3 (W.D. Mo. Oct. 11, 1979); *Regional Multiple Listing Service of Minnesota, Inc. v. American Home Realty Network, Inc.*, 960 F.Supp.2d 958, 984 (D. Minn. 2013).[10]

Defendants argue Plaintiff has failed to sufficiently plead the existence of a conspiracy. Specifically, Defendants state, "Plaintiff has not presented sufficient evidence to show Defendants had a 'unity of purpose' or that there is no possibility that Defendants' alleged actions were not taken independently of each other" [ECF No. 67 at 15], and Defendants claim the facts pled by Plaintiff "are insufficient to establish that Defendants are related, or that they acted in concert" [ECF No. 67 at 16]. Further, Defendants argue Plaintiff makes only "conclusory allegations regarding restraint on [the relevant] market" and has failed to sufficiently plead "detrimental effects" on the market by making "only conclusory, bare bones allegations regarding public injury" [ECF No. 67 at 17, 18]. Related to the "market" issue, Defendants

---

[10] Both parties recite these requirements in their briefs and reference the elements in their arguments for and against dismissal. Thus, neither party disputes these "rule of reason" elements are the requirements relevant to this dismissal analysis.

claim the Second Amended Complaint neither provides sufficient information about the St. Louis market or molded pulp manufacturing industry, nor sufficiently contends "Defendants are even a part of the molded pulp manufacturing industry in any market" [ECF No. 67 at 18].

In response, Plaintiff disputes Defendants' contention the pleadings must "exclude the possibility" the "alleged co[-]conspirators acted independently" or with a "unity of purpose" [ECF No. 70 at 14]. Further, Plaintiff claims it has "properly pled the elements of a cause of action under the Sherman Anti-Trust Act" [ECF No. 70 at 14]. As to the combination or conspiracy element, Plaintiff cites to Paragraphs 132 and 133 of the Second Amended Complaint (*see supra*) [ECF No. 70 at 14-15]. As to anticompetitive effects and the relevant markets, as well as the "injured as a proximate result" element, Plaintiff cites to Paragraphs 136 and 137 (*see supra*) [ECF No. 70 at 15]. Finally, as to the requirement of alleging "the objects of and conduct pursuant to the contract or conspiracy were illegal," Plaintiff argues it has "properly alleged" this element "throughout its Complaint" because the Second Amended Complaint alleges the relevant conduct included "breaching the Zenfinity Agreement, tort[i]ously interfering with the Zenfinity Agreement and Plaintiff's employment relationships and contracts, and [violating] the MUTSA" [ECF No. 70 at 15].

Under the "rule of reason," plaintiffs must allege facts establishing a defendant's "alleged wrongful acts *unreasonably* restrained trade in a particular sector of the economy," i.e., in the relevant product and geographical markets. *H.J. Hodes and Co.*, 1979 WL 1804, at *5 (emphasis in original) (internal citation omitted). To that point, "[s]ignificant anti-competitive effects may include an actual increase in the price of the good or service, a decrease in output, or a decline in quality." *Insignia Sys., Inc. v. News Am. Marketing In-Store, Inc.*, 2006 WL 1851137, at *5 (D. Minn. June 30, 2006) (internal citation omitted). However:

> Where . . . an antitrust plaintiff alleges nothing more than that a competitor in interstate commerce has by means of unfair business practices deprived plaintiff of key employees, business[,] and confidential records or information, but does not allege any public injury resulting from the defendant's conduct, plaintiff must seek relief at common law and not under [Section] 1 of the Sherman Act.

*Stifel, Nicolaus & Co., Inc. v. Dain, Kalman & Quail, Inc.*, 578 F.2d 1256, 1261 (8th Cir. 1978).

"An antitrust complaint must allege facts from which it can be determined that the conduct charged to be in violation of the antitrust laws was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce." *Quality Mercury, Inc. v. Ford Motor Co.*, 542 F.2d 466, 472 (8th Cir. 1976) (internal citation and quotations omitted).

The Court finds Plaintiff has failed to sufficiently plead facts showing the unreasonable restraint of trade in the relevant markets. In particular, the Second Amended Complaint fails to adequately plead the existence of anticompetitive effects and public injury. Regarding anticompetitive effects and injury, Plaintiff cites in its brief to Paragraphs 136 and 137 [ECF No. 70 at 15]. In Paragraph 136, Plaintiff claims the conspiracy at issue "was entered into by Defendants with the intention of *restraining competition* in the relevant market – the St. Louis market and the small molded pulp manufacturing industry" [ECF No. 52 at ¶ 136 (emphasis added)].[11] Again, in Paragraph 137, Plaintiff contends:

> Defendants' actions have damaged Plaintiff and *restrained competition* in the St. Louis market and the molded pulp manufacturing industry by, among other things, unfairly reducing the value of Plaintiff's products and services[,] therefore stifling innovation in the industry and improperly utilizing Plaintiff's confidential customer information gathered to solicit those customers[,] therefore garnering an unfair advantage in the solicitation of those customers.

[ECF No. 52 at ¶ 137 (emphasis added)]. These appear to be the only allegations in Count VII which speak to the broader issue of how Defendants' alleged actions have negatively impacted or

---

[11] The Court notes Paragraph 134 similarly alleges Defendants made an "effort" to "*restrain competition* in the molded pulp industry including the St. Louis market" [ECF No. 52 at ¶ 134 (emphasis added)].

injured the relevant markets.[12]

These more market-oriented or public-oriented statements in Paragraphs 136 and 137 are devoid of sufficient factual enhancement. They do not allege an increase in prices, nor do they plead factual content which allows the court to draw a reasonable inference of a decline in quality, a decrease in output, or any other anticompetitive effect. Although Plaintiff claims Defendants have restrained competition by "unfairly reducing the value of Plaintiff's products and services" and "stifling innovation in the industry" [ECF No. 52 at ¶ 137],[13] Plaintiff fails to make clear what is meant by these statements, and also fails to allege facts showing how Defendants' alleged conduct produced these results. Plaintiff's general statements claiming Defendants "restrained competition" and two short conclusory allegations of purported effects are "so indeterminate that they require further factual enhancement in order to state a claim." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). Threadbare recitals of the relevant elements, supported by mere bare assertions and conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678 (internal citation omitted); *see also Crest Constr. II, Inc.*, 660 F.3d at 355. The absence of sufficient public injury allegations and allegations of anticompetitive effect demands dismissal of Plaintiff's Sherman Act claim. *See H.J. Hodes and Co.*, 1979 WL 1804, at *6. Therefore, Count VII is dismissed. On this issue, Defendants' Motion is granted.

Accordingly,

**IT IS HEREBY ORDERED** that "Defendants Zenfinity Capital, LLC, Zenfinity Capital Group, LLC, Footprint, LLC and Jared Bearinger's Motion to Dismiss" [ECF No. 62] is

---

[12] Rather, Plaintiff repeatedly alleges actions taken by Defendants to harm Plaintiff itself [*See* ECF No. 52 at ¶¶ 132-35].

[13] Paragraph 137 also claims Defendants "improperly utilize[ed] Plaintiff's confidential customer information and "garner[ed] an unfair advantage in the solicitation of [Plaintiff's] customers" [ECF No. 52 at ¶ 137]. However, again, these contentions involve harm to Plaintiff and fail to allege the broader harm at issue here.

**GRANTED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's claim in Count II for tortious interference with business relationships and contracts shall be **DISMISSED, without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's claim in Count III for tortious interference with a contract, to the extent it relies on or is based on the misappropriation of trade secrets, shall be **DISMISSED, in part, without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's claim in Count V for civil conspiracy to violate MUTSA shall be **DISMISSED, without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's claim in Count VI for civil conspiracy to tortiously interfere with contracts shall be **DISMISSED, without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's claim in Count VII for violation of the Sherman Antitrust Act shall be **DISMISSED, without prejudice.**

Dated this <u>23rd</u> Day of January, 2015.

E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE